IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAULA M. SEWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-14-1216-L |
| | ) | |
| CAROLYN W. COLVIN, acting | ) | |
| Commissioner Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Acting Commissioner (Commissioner) issued a final decision denying Paula Seward's (Plaintiff) applications for disability insurance benefits and supplemental security income under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). United States District Court Judge Tim Leonard referred the matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, the administrative record (AR), and the parties' briefs, and recommends that the court affirm the Commissioner's decision.

I. **Background and administrative proceedings.**

Plaintiff filed applications for disability insurance benefits and supplemental security income payments in July 2009, alleging a disability

based on "scoliosis" and "wrist injury." AR 124, 143. The Social Security Administration (SSA) denied Plaintiff's claims, and at her request, an Administrative Law Judge (ALJ) conducted a hearing. *Id*. at 27-61. In his May 2011 decision, the ALJ found Plaintiff is not disabled within the Social Security Act's meaning. *Id*. at 19-22. On review, this Court reversed the Commissioner's decision because "[t]he ALJ's failure to consider ARNP Geurts' treatment notes and opinion was reversible error." *Id*. at 311; *see also id*. at 301-302.

On remand, the ALJ held another hearing, *id*. at 258-99, and in September 2014 issued a second decision finding that Plaintiff is not disabled. *Id*. at 243-53. Plaintiff again seeks review in this Court. Doc. 1.

## II. The ALJ's findings.

Following the well-established five-step inquiry to determine whether a claimant is disabled, *see* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps), the ALJ found that Plaintiff: (1) met the insured status requirements through December 31, 2014; (2) has severe "degenerative disc disease

(scoliosis) [and] obesity"; (3) has the residual functional capacity (RFC)[1] to perform light work with several exertional and nonexertional limitations; and, (4) can perform work in the national economy. AR 245-52.

## III. Plaintiff's claims.

Plaintiff challenges the Commissioner's decision on three grounds. First, she alleges that the ALJ failed to properly consider and weigh the medical source opinions. Doc. 13, at 2-6. Second, Plaintiff argues the ALJ failed to consider the effect her severe obesity has on her RFC. *Id.* at 6-9. Third and finally, Plaintiff alleges that the ALJ erred in assessing her credibility. *Id.* at 10-14.

## IV. Analysis.

### A. Standard of review.

This Court reviews the Commissioner's final decision to determine "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). In reviewing the ALJ's opinion, "common sense, not technical perfection, is [the court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). The court may find

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

an ALJ's error harmless, if "based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way[.]" *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B. The ALJ's alleged errors in weighing the medical opinions.

Plaintiff first challenges the weight the ALJ assigned to the medical opinions. Plaintiff claims the ALJ again failed to properly consider the nurse practitioner's opinions and failed to explain why he gave greater weight to the medical expert's (ME) opinion. Doc. 13, at 2-6. The undersigned finds no grounds for reversal.

#### 1. The standard for evaluating medical opinions.

"An ALJ must evaluate every medical opinion in the record, . . . although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citation omitted). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving it." *Id.* (citation omitted).

A nurse practitioner is not an "acceptable medical source"; nevertheless, an ALJ must consider and weigh a nurse practitioner's opinion. *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007). SSR 06-03p provides a guide, and encourages an ALJ to consider: (1) "[h]ow long the source has known and how frequently the source has seen the individual"; (2) "[h]ow consistent the opinion is with other evidence"; (3) "[t]he degree to which the source presents relevant evidence to support an opinion"; (4) "[h]ow well the source explains the opinion"; (5) "[w]hether the source has a specialty or area of expertise related to the individual's impairment(s)"; and (6) "[a]ny other factors that tend to support or refute the opinion." SSR 06-3p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).

### 2. The nurse practitioner's opinions.

Plaintiff received medical treatment from Carrie Geurts, an Advanced Registered Nurse Practitioner (ARNP) at the Mary Mahoney Health Center, AR 213-35, and ARNP Guerts submitted three opinions to the SSA. In March 2010, ARNP Geurts wrote: "Please consider [Plaintiff] for disability[.] Diagnosis moderate scoliosis & lupus." *Id.* at 213. Then, in an undated letter, the nurse practitioner wrote:

> [Plaintiff] has a history of moderate scoliosis, chronic back pain, hypertension, eczema, hypothyroidism, dyslipidemia, type 2 diabetes mellitus, and meets the diagnostic criteria for lupus.

5

> She has significant chronic pain and activity intolerance due to these problems and therefore is unable to sustain employment. Please consider her for disability benefits.

*Id*. at 235. Finally, in a "Treating Source Statement" dated February 8, 2011, ARNP Geurts opined that Plaintiff can stand and/or walk "less than 2 hrs" in an 8-hour workday and can only sit "less than 2 hrs" in an 8-hour workday. *Id*. at 227. For supporting medical findings, the nurse practitioner listed Plaintiff's "moderate severity scoliosis" and "chronic back pain." *Id*.

This Court reversed the Commissioner's first benefits denial because:

> The ALJ mentioned ARNP Geurts' treatment notes only once and only while finding that Plaintiff did not have a "severe" impairment involving lupus. On that issue the ALJ stated: 'being a nurse practitioner, ARNP Geurts is not an acceptable medical source.' Thereafter, in his assessment of the medical evidence and Plaintiff's RFC, the ALJ did not reference any of ARNP Geurts' relevant treatment notes, nor did he mention ARNP Geurts' functional limitation opinion, which Dr. Ayitey approved. The ALJ gave no explanation for his failure to consider the evidence.

*Id*. at 307-08 (footnote omitted).

Plaintiff alleges that in his second decision the ALJ "failed to comply with this Court's remand instructions," Doc. 13, at 3, but the undersigned disagrees. Admittedly, the ALJ again stated that Nurse Geurts "is not considered an acceptable treating source . . . and her assessment is given no

weight." AR 249. However, unlike in his first decision, the ALJ clearly considered her opinions in his second decision.

The ALJ discussed ARNP Geurts' opinion regarding Plaintiff's functional limitations and both her letters to the SSA. *Id.* at 249-50. First, the ALJ noted that the nurse practitioner's letters urging a disability finding invaded the Commissioner's province. *Id.* Next, the ALJ rejected Nurse Geurts' opinion that Plaintiff cannot work based on a history of "Moderate Scoliosis and Lupus," noting that Plaintiff worked for seven years with scoliosis and "there is no substantive evidence in the record to undergird the assertion that [Plaintiff's] allege[d] Lupus is a medically determinable impairment." *Id.* at 250. Finally, the ALJ emphasized several times he had "considered all of the relevant evidence in this record including Nurse Geurts' assessment, opinion and treatment notes." *Id.*

Plaintiff argues that the ALJ's discussion was insufficient and that he failed to apply all the relevant factors. Doc. 13, at 5. While the undersigned agrees that the ALJ might have included a lengthier discussion, his failure to specifically discuss every single SSR 06-3p factor is not grounds for reversal. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). And, reading the ALJ's opinion with common sense, the undersigned finds that the ALJ properly considered Nurse Geurts' opinions and articulated reasons for giving

7

her opinions no weight. *See Nichols v. Astrue*, 341 F. App'x 450, 453-54 (10th Cir. 2009) (affirming the ALJ's rejection of a nurse's opinion because she "is not a doctor and is not an acceptable treating source" because "[a]lthough not expressly stated in the ALJ's decision, it is reasonably clear that the ALJ found her opinion to be inconsistent . . ." and noting that "he provided good reasons for giving little weight to the opinion, and that is all we require").[2]

### 3. The ME's opinion.

Dr. Arthur Lorenberg[3] testified as an ME and stated that after reviewing Exhibits 1F through 13F (Plaintiff's medical records), it was his opinion that:

> [Plaintiff may] occasionally lift 20 pounds and frequently 10 pounds . . . .
>
> . . . .

---

[2] Plaintiff repeatedly mentions that Dr. Rosemary Ayitey co-signed the nurse practitioner's notes and opinions, but fails to develop any argument related to the information. Doc. 13, at 2-6. If Plaintiff is hinting that Dr. Ayitey's signature elevates Nurse Geurts to an acceptable medical source, she is incorrect. *See, e.g., Nichols v. Comm. of the Soc. Sec. Admin.*, 260 F.Supp.2d 1057, 1066 (D. Kan. 2003) ("The [physician's] mere co-signing of the [nurse practitioner's] report does not create an interdisciplinary team within the meaning of the regulation. Consequently, the opinions contained in the Medical Source Statement can only be attributed to [the nurse practitioner].").

[3] The ALJ and Plaintiff inadvertently identified Dr. Lorenberg as "Dr. Arthur Lorber." AR 248-49; Doc. 13, at 7-8; Doc. 20, at 3-5.

> Standing and walking can be done for a total of four hours per day, not more than 30 minutes at a time. Sitting can be accomplished for a total of six hours per day, not more than 30 minutes at a time.

AR 279, 284-85. The ALJ gave the ME's opinion "great weight." *Id.* at 249.

Plaintiff complains that the ALJ gave the ME's opinion great weight even though he had never examined Plaintiff. Doc. 13, at 5-6. She also argues that the ALJ ignored an "inherent contradiction" because he gave Nurse Geurts' opinions no weight, yet the ME's opinion was based in large part on the nurse practitioner's treatment notes. *Id.* at 6. The undersigned finds no merit in these arguments.

Although the ME did not examine Plaintiff, the physician is an acceptable medical source and the ALJ specifically stated that the ME's opinion "was consistent with the record as a whole . . . ." AR 249. While Plaintiff believes this statement is too vague, she does not ultimately dispute the finding. She does not argue that the ME's opinion contradicts Nurse Geurts' *treatment notes*, only that it contradicts her *opinions*. But as discussed above, the ALJ properly discounted ARNP Geurts' opinions and it is not for this Court to reweigh the evidence. *See Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) ("We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of

9

evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's."). Under these circumstances, the undersigned finds no grounds for reversal.

**C. The ALJ's alleged failure to consider how Plaintiff's obesity affects her RFC limitations.**

The ALJ found that Plaintiff has severe obesity, AR 245, and Plaintiff claims he ignored that finding when assessing her RFC. Doc. 13, at 6-9. The undersigned disagrees.

SSR 02-1p requires the ALJ to not only consider the effects of a claimant's obesity but to also consider the combined effects of obesity with other impairments. *See* SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002). Reading the ALJ's opinion with common sense, *see Keyes-Zachary*, 695 F.3d at 1167, the undersigned finds that the ALJ complied with SSR 02-1p by adopting the ME's testimony.

The ME testified that: "[Plaintiff] is 4' 10" tall and 170 pounds. I will consider the [e]ffects . . . her body has upon her other impairments. She is obese. She is noted as having scoliosis." AR 281. The ALJ interpreted this testimony as expressing that "[Plaintiff's] impairments of obesity and a back impairment would reduce her residual functional capacity," *id.* at 248, and his RFC finding mirrored the ME's opinion. *Compare id.* at 247-48, *with id.*

10

at 284-85; *see also Dean v. Astrue*, No. 09-1317-SAC, 2010 WL 4942135, at *3 (D. Kan. Nov. 30, 2010) (unpublished order) (finding no error in the ALJ's failure to specifically discuss plaintiff's severe obesity where "the medial opinion evidence regarding plaintiff's limitations which was relied on by the ALJ in making his RFC findings took into account plaintiff's obesity").

Plaintiff argues that the ALJ gave the ME's testimony too broad a reading and claims that the expert never reiterated that he considered Plaintiff's obesity. Doc. 13, at 7. But as illustrated above, the ME specifically stated that he *was* considering Plaintiff's obesity and its effect on her other impairments, and the undersigned finds it entirely reasonable that the ALJ took the ME at his word. "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). Finally, no treating or examining medical provider imposed specific work-related limitations stemming from Plaintiff's obesity, and she fails to articulate what limitations she believes her obesity has on her RFC that the ALJ did not already include. *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (rejecting plaintiff's claim that the ALJ committed reversible error in finding her obesity "severe" but not including specific limitations in the RFC because

"there is no record indication of any functional limitations from [plaintiff's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC"); *McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming in part because "with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations" (citation and internal brackets omitted)).

### D. The ALJ's alleged errors in assessing Plaintiff's credibility.

The ALJ discussed the medical evidence and reiterated Plaintiff's own functional report and testimony. Ultimately, he found her allegations "not entirely credible." AR 249. Plaintiff alleges that the ALJ improperly relied on a lack of objective evidence and her conservative medical treatment and failed to recognize her "limited activities." Doc. 13, at 10-14.

#### 1. The ALJ's duty to assess credibility.

Once an ALJ finds that a claimant has a pain-producing impairment, he must take the next step and assess the claimant's credibility. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Besides objective evidence, the ALJ may consider certain factors in evaluating a claimant's credibility, including

the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *Keyes-Zachary*, 695 F.3d at 1167.

### 2. The ALJ's alleged reliance on a lack of objective medical evidence.

Plaintiff first claims that the ALJ improperly discredited her based on a lack of objective evidence establishing her pain. In support, Plaintiff relies on the ALJ's statement that: "There is no objective evidence to suggest that the claimant would be unable to perform this level of exertional and mental tasks." Doc. 13, at 10-11 (citing AR 250).[4] But Plaintiff misinterprets the opinion.

---

[4] Plaintiff also argues that the ALJ "did not point to any 'objective' evidence showing that Plaintiff <u>could</u> perform the physical and mental RFC

It is understood that "a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." *Shockley v. Colvin*, 564 F. App'x 935, 942-43 (10th Cir. 2014). However, the ALJ *did not* say there was no objective evidence to corroborate Plaintiff's pain allegations or that he was discrediting Plaintiff on that basis. The ALJ stated that: "The undersigned does find that [Plaintiff] has moderate pain, which would reduce her ability to concentrate and attend somewhat (a moderate restriction)." AR 249. The ALJ also gave the state agency physician's RFC opinion little weight because he doubted that "in light of [Plaintiff's] lumbar pain that she would be able to stand or walk up to 6 hours in an 8 hour workday." *Id.*

Reading the ALJ's statement in context and with common sense, the undersigned interprets the ALJ's comment as connected to his related RFC assessment and *not* as a supporting factor for diminishing Plaintiff's credibility. So, reversal is not required.

---

the ALJ assessed." Doc. 13, at 10. The undersigned gives this statement no credence for two reasons. One, Plaintiff is simply incorrect, as the ALJ discussed all the medical evidence in the record. AR 246-47, 248-50. Two, if Plaintiff is attempting to assert that the RFC lacks substantial evidence, she has presented a fatally underdeveloped argument. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (finding that inadequately framed or developed "perfunctory complaints" are insufficient to invoke review); *see also Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (holding that the court will consider waived all "unspecific, undeveloped, and unsupported" arguments).

### 3. The ALJ's reliance on a lack of aggressive medical treatment.

Next, Plaintiff complains that the ALJ erred in saying that:

> The undersigned ALJ has taken into consideration the claimant's chronic pain, but note[d] that the claimant has not had spinal surgery, or is on or has had any kind of significant pain management protocol including epidural steroidal injections or consistent use of prescribed narcotic pain medications.

Doc. 13, at 12 (citing AR 250). According to Plaintiff, the ALJ failed to question her as to whether any physician had recommended these treatments or if Plaintiff's failure to engage in such treatment was based on financial concerns. *Id.* at 12-14. The undersigned finds the error to be harmless.

An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . ." SSR 96-7p, 1996 WL 374186, at *7. Admittedly, the ALJ did not ask Plaintiff whether health care professionals had recommended more extensive treatment and, if so, why she did not pursue those treatments. However, the ALJ discussed all the medical evidence, and "[g]iven the record evidence concerning the treatment [Plaintiff] received for [her] back pain . . . , the ALJ's conclusion that [her] treatment was essentially routine and/or conservative in nature, . . . was supported by substantial evidence." *Alarid*

*v. Colvin*, 590 F. App'x 789, 794-95 (10th Cir. 2014) (internal quotations and citation omitted). The record reflects that Plaintiff successfully received medical treatment and she "has provided no evidence that [s]he sought to obtain additional low-cost medical treatment or that [s]he has been denied medical care because of [her] financial condition." *Mayberry v. Astrue*, 461 F. App'x 705, 711 (10th Cir. 2012) (internal quotations and citation omitted). So, the undersigned finds that the ALJ's failure to question Plaintiff about her conservative medical treatment before relying on it to find her less than credible is harmless error.

### 4. The ALJ's alleged failure to recognize Plaintiff's limited activities.

Finally, Plaintiff alleges in two sentences that: "The ALJ failed to recognize Plaintiff's limited activities as such. The ALJ failed to consider that Plaintiff lived in a structured environment where she could perform, with her brother's help, the necessary tasks for basic subsistence." Doc. 13, at 13. The undersigned finds no merit in this underdeveloped argument. The ALJ set forth Plaintiff's activities as she described them in her functional report. AR 250. Plaintiff does not allege that the ALJ misstated these activities, nor does it appear that the ALJ relied heavily on Plaintiff's ability

to perform daily activities in finding her credibility diminished. *Id.* at 248-50. So, the undersigned finds no reversible error.

## V. Recommendation and notice of right to object.

For the reasons stated, the undersigned recommends that the court affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation no later than September 16, 2015, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 27th day of August, 2015.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE